[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for custody brought by the plaintiff father against the defendant mother. The parties are not married to each other or to anyone else. The plaintiff has lived in the State of Connecticut for at least one year prior to the filing of this action; therefore, the court has jurisdiction. Neither party has been the recipient of local, state or federal aid.
Originally, the action was brought for visitation and for declaration that the plaintiff was the father of the child and that his name, therefore, be inserted on the child's birth certificate. The claim for custody was added subsequently in 1992.
The plaintiff's name has now been added to the child's birth certificate.
The reason for the change in the purpose of the action from visitation to custody was because the plaintiff felt he was being frustrated in trying to obtain appropriate visitation with his son. In fact, the real problem in the matter as the testimony revealed is the persistent conflict between the plaintiff and the defendant and her parents with respect to his visiting his son. CT Page 10930
The genesis of the conflict began with the birth of the child in 1988. Prior to the child's birth, plaintiff and defendant had a relationship which had resulted in an earlier pregnancy which the defendant had aborted. Four months later she was pregnant again, this time with Edward. At that point or perhaps a few months later but before the birth of the child, she returned from the plaintiff's home to her parents' home. There is a lot of confusion about the attitude of the plaintiff with respect to the birth of Edward and his responsibility for his care.
It appears to the court that neither plaintiff nor defendant were ready, willing or able to take on the full care of the child at the time of his birth. The people who were interested and able to do so were the defendant's parents. While they had taken no steps to persuade the defendant after her first abortion that she should not continue her relationship with the plaintiff, following the birth of Edward they became, especially Mrs. Rude, opposed to plaintiff having any contact with the child. Part of their reaction was due to the plaintiff's conduct in seeking to reestablish a relationship with the defendant. The defendant had told him she was no longer in love with him and was interested in someone else and no longer wanted to see him. The plaintiff, however, harassed her and her parents with phone calls and letters and thus managed to solidify the defendant's parents' judgment that he should have nothing to do with his son or their daughter.
While both Rudes testified that they had contemplated moving back to Maryland for some years previously because that was where Mrs. Rude had family and where they had lived before Mr. Rude obtained his position in Stamford, the immediate impetus for their moving to Maryland was to break off any contact with the plaintiff.
The secrecy with which they executed the move is ample testimony to their purpose to try to keep the plaintiff from having contact with his son and with their daughter. In fact, the plaintiff did not find out where they were until he had obtained counsel and sought court help.
While the extent of the plaintiff's involvement in the early years following Edward's birth is somewhat sketchy, his involvement or his desire for visitation appears to have increased as the child grew older. He was able, through court action as well as agreements with the defendant, to obtain visitation CT Page 10931 initially on a once a month basis in Maryland for one or two hours which eventually became three or four hours and finally after some months, under supervision, a weekend, an overnight visit.
While the plaintiff did have increased visitation over a period of years, it does seem to the court the hostility which Mrs. Rude, the defendant's mother, expressed toward him was reflected in her falling to carry out some of the agreements on visitation made between her daughter and the plaintiff.
While this action is between the mother and the father of the child, the fact is that the primary caretaker of the child is the defendant's mother and father. They all live in Columbia, Maryland in a house which the defendant's parents built and to which they added a basement apartment for the defendant. Initially, the defendant lived with a girlfriend for a brief period and then returned to Connecticut for a semester at the University of Connecticut while Edward stayed with her parents in their Maryland home. Upon her return, she lived in the basement apartment while Edward had a bedroom upstairs where the grandparents' part of the house was located. He did have access to his mother's apartment, but he was, nevertheless, sleeping in his grandparents' part of the house.
For all intents and purposes, the grandparents were and still are parenting the child. Nevertheless, the question in this case is what is in the child's best interest. Both the Family Relations Officer and the psychologist, Dr. Adamkis, have recommended that he be left in the custody of his mother so long as she lives in the home of her parents. They believe that Edward is comfortable there now, has been appropriately cared for and there is no basis for making a change at this time. This is particularly so when the plans of the plaintiff, should he get custody, are somewhat ephemeral. He lives with his parents who have volunteered no information or about whom he has volunteered little information. They do not appear to have much to do with Edward even when he is visiting with his father in Connecticut. It is also clear that if his father is to either go to school, as he is now, or work there would have to be someone else providing for his day-to-day care just as the defendant has to have her parents provide that day-to-day care while she works.
Consequently, it is not a question of providing Edward with full time care of one parent against the part time care of another, but giving him, rather, part time to one parent who has CT Page 10932 not provided any adequate program for Edward's full time care as against a part time parent who has provided appropriate care with her parents while she works.
The court finds that it is in the best interest of the child for him to remain in the custody of the defendant so long as she is living in the home of her parents. Should that situation change, then custody might also be changed.
Given the plaintiff's lack of income, except from Social Security, as the defendant's counsel has said in his brief, there is no basis for a support order. Edward does get Social Security benefits of $80 a week because his father is receiving Social Security Disability benefits resulting from a nerve injury to his back in an automobile accident in 1991. He is apparently disabled from doing his prior job of lobster fisherman but it is not clear that he is disabled from any other work. The plaintiff testified that because he was receiving Social Security Disability benefits he may not work for income. On that assumption together with the fact that Edward is receiving $80 a week from the Social Security benefits, no other support will issue.
The major problem, which was the reason for the starting of the action in the first place, is visitation. The court will order the visitation schedule set forth hereafter.
The court having considered all the evidence and testimony finds that the best interest of the child will be served by the following orders:
1. Continued sole custody to the defendant so long as she resides in her parents' home.
2. The plaintiff shall have visitation for one weekend a month in Connecticut with transportation to be determined by the plaintiff but not to include flying unless Edward is accompanied by an adult known to him. The expense of that transportation shall be shared equally by the parents.
3. The plaintiff shall have visitation during two school vacations during the school year; that is, the spring vacation and the winter vacation, whenever they occur, as set forth hereafter.
4. The plaintiff shall have visitation on holidays as follows: CT Page 10933
 a. On the weekends which end in a Monday school holiday, the plaintiff may have visitation until 5:00 p. m. on Monday. This shall be his visit for the month.
 b. The Easter, Thanksgiving and Christmas holidays shall be alternated as indicated below:
 1. For Easter, 1996, the plaintiff shall have visitation from Friday after school until 3:00 p. m. on Sunday. If the spring vacation begins on Easter weekend, then he may have visitation until the following Wednesday at 5:00 p. m.
 In 1997, the plaintiff's visitation shall begin on the Wednesday after Easter if the spring vacation is that week. If it is not, he may have the entire spring vacation beginning the day after school closes to the second day before it opens at 5:00 p. m.
 When the Easter weekend is not part of the spring vacation, then that weekend will be alternated beginning in 1996 with the plaintiff having the weekend and the defendant having it in 1997 and alternately thereafter.
 2. In 1995, Christmas will be shared as follows: the defendant will have Edward from the close of school on December 22 to December 26 at 10:00 a.m. The plaintiff shall have visitation from December 26 at 10:00 a.m. until January 1st at 5:00 p. m. In 1996, the plaintiff shall have Edward for the same period the defendant had in 1995. The parties shall alternate the visitation thereafter using the same pattern.
 4. Thanksgiving will be alternated as follows: the plaintiff may have visitation with Edward from the Wednesday before Thanksgiving at 5:00 p. m. until Sunday after Thanksgiving at 5:00 p. m. in 1995. In 1996, the defendant will have the Thanksgiving holiday to the same extent as the plaintiff had in 1995. Thereafter, the parties shall alternate this holiday.
CT Page 10934
5. Medical Insurance: Since the defendant carries Edward on her health insurance policy, she shall continue to do so but the plaintiff shall be liable for sharing any medical, hospital, psychiatric, dental, etc. expenses that are not covered by insurance. To this end, the defendant must keep the plaintiff informed of Edward's physical, mental and dental condition and of any doctor's or hospital treatments he may receive.
6. Phone calls: The plaintiff shall have access to Edward through the telephone at 8:00 p. m. on Monday evenings, and the defendant shall have the responsibility of seeing that Edward is available for the plaintiff's call and that Edward has privacy during the call.
7. The plaintiff may have the child visit with him for six weeks during the summer, beginning the day after school closes and ending two days before it opens. The six weeks, however, should be taken in groups of three and three or four and two, at the plaintiff's option. The plaintiff is to notify the defendant and the grandparents the dates on which he wishes to exercise his visitation by May let of the year before the summer.
8. Each party shall pay his or her own attorney's fees.
9. The parties shall each pay one half of the attorney's fees of the counsel for Edward Attorney Hennessey, whose fees are approved as reasonable.
It is so ordered.
MARGARET C. DRISCOLL STATE TRIAL REFEREE